**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR THREE FACEBOOK ACCOUNTS SERVICED BY META PLATFORMS, INC.** | ML No. 22-ml-935 |

*Reference:    DOJ Ref. # CRM-182-83235; Subject Accounts: 100024693937752; 100003842654593; 100051153371408*

**APPLICATION OF THE UNITED STATES**
**FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Treaty Between the Government of the United States of America and the Government of Romania on Mutual Legal Assistance in Criminal Matters, Rom.-U.S., May 26, 1999, S. TREATY DOC. NO. 106-20 (2000) (hereinafter, the "Treaty"), as supplemented by the Extradition Treaty Between the United States of America and Romania and the Protocol to the Treaty Between the United States of America and Romania on Mutual Legal Assistance in Criminal Matters, Rom.-U.S., September 10, 2007, S. TREATY DOC. NO. 110-11 (2008) (hereinafter, the "Protocol"), to execute a request from Romania.  The proposed Order would require Meta Platforms, Inc. ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Menlo Park, California, to disclose certain records and other information pertaining to the PROVIDER accounts associated with **100024693937752**, **100003842654593**, and **100051153371408**, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.  The records and other information to be disclosed

are described in Part II of Attachment A to the proposed Order.  In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.        PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A.  *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.         Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed Order.  *See* Treaty art. 5(1) (authorizing courts to issue orders necessary to execute the request). In addition, this Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711.  18 U.S.C. § 2703(d).  Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3.        Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1).  This application to execute Romania's request has been duly authorized

by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application.  The undersigned has reviewed the request and has confirmed that it was submitted by authorities in Romania in connection with a criminal investigation and/or prosecution.

4.      A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5.      Authorities in Romania are investigating and prosecuting two suspects for murder offenses, which occurred on November 20, 2020, in violation of the criminal law of Romania, specifically, Article 188 of the Romanian Criminal Code.  A copy of the applicable law is appended to this application.  The United States, through the Office of International Affairs, received a request from Romania to provide the requested records to assist in the criminal investigation and/or prosecution.   Under the Treaty and Protocol, the United States is obligated to render assistance in response to the request.

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

6.      According to Romanian authorities, on November 20, 2020, at around 10:00 p.m. (UTC +2), Adrian Bila ("Bila") and Raul Pasula ("Pasula") beat a man ("the Victim") in Romania.  The Victim later died as a result.  At Bila's request, his brother, Catalin Bila ("Catalin"), recorded a video of the attack on his mobile phone.  The video was later shared among the participants on Facebook.

7.      When questioned by Romanian authorities, Bila admitted to punching the Victim several times on the night of the attack.  Bila stated that, on the evening of November 20, 2020, his father arrived home with three men, one of whom was the Victim.  All four men were visibly drunk.  Bila wanted the three drunken guests to leave the house.  He intended to get the guests "out by force[.]"  He admitted to telling Catalin to record a video of the attack on Catalin's mobile phone.

8.      According to Bila, Catalin sent him the video shortly after the attack, which he then sent from his Facebook account **100024693937752** to Pasula's Facebook account **100051153371408**.

9.      Romanian authorities also questioned Pasula.  Pasula told Romanian authorities that on the night of the attack, he was with a friend who also knew Bila.  Bila called and asked the mutual friend to come to his house to make fun of the people "getting drunk there."  Pasula drove with his friend to the house.  Pasula admitted to punching at least one person during the attack, stating that he "did the same" as the others.  On the night of the attack, Catalin sent the video to Pasula's Facebook account **100051153371408**.

10.     Romanian authorities forensically examined Pasula's mobile phone.  They confirmed both that Pasula had the Facebook application installed on his phone and that he sent

the video from his Facebook account **100051153371408** to another Facebook account on November 20, 2020, at around 10:37:32 p.m. (UTC +2).

11.     When questioned by Romanian authorities, Catalin said, "the duration of the entire video was around thirty seconds." He admitted to sending the video from his Facebook account **100003842654593** to Bila's Facebook account **100024693937752**. Romanian authorities forensically examined Catalin's mobile phone, which he used to record the attack. They discovered that he had deleted the video from his phone. However, they determined that Catalin sent the video from his Facebook account **100003842654593** to Pasula's Facebook account **100051153371408**, on November 20, 2020, at around 10:37:32 p.m. (UTC +2).

12.     During the forensic examination of the aforementioned mobile phones, Romanian authorities obtained fragments of the video but could not retrieve the full video.

13.     The Facebook accounts **100024693937752**, **100051153371408**, and **100003842654593** are serviced by PROVIDER. As a result, Romanian authorities seek certain records from PROVIDER to determine the nature and scope of the suspects' criminal activities.

## REQUEST FOR ORDER

14.     The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help authorities in Romania verify whether the video still exists in the target accounts and confirm whether and when it was shared among those accounts.

Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199


By: _____
Vanessa M. Otero
Trial Attorney
Maryland State Bar Member
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 300
Washington, D.C.  20530
(202) 305-9827 telephone
(202) 514-0080 facsimile
Vanessa.Otero@usdoj.gov

## Relevant Provision of Romanian Criminal Code

**Article 188 – Murder**

1. Murdering an individual shall be punishable by no less than ten and no more than twenty years of imprisonment and a ban on the exercise of certain rights.

2. The attempt shall also be punishable.